Argued April 19, affirmed June 26, 1928, argued on rehearing January 8, former opinion adhered to January 15, 1929.

H. C. KLINGE *v.* HARRY L. FARRIS.

(268 Pac. 748; 273 Pac. 954.)

For appellant there was a brief over the name of *Mr. I. G. Ankelis,* with an oral argument by *Mr. Thomas Mannix.*

For respondent there was a brief over the name of *Mr. W. H. Powell,* with an oral argument by *Mr. Eugene H. Dowling.*

BEAN, J.—Plaintiff alleges that the foxes agreed to be sold to him were the best breed and strain of silver fox that could be obtained, superior to any other foxes that could be purchased in the market; that they were good breeders; that plaintiff would have the option of selecting during the following spring, to take either two pups, or an average of the pups raised on defendant's farm for the season, *pro rata,* and in proportion to the number of pairs of breeding foxes on such farm; that the foxes raised on defendant's farm were strong and healthy, free from nervousness usual to foreign-born and raised foxes. That at the time set for the delivery of the foxes, October 1, 1926, plaintiff called upon defendant and ascertained that defendant could not deliver to plaintiff the two pups agreed to be sold by defendant, and the defendant had no such foxes, but that defendant offered to deliver two foxes raised in Canada, not acclimated to Oregon, which were irritable and nervous, which were inferior in quality, were of the market value of $150 each only and were weak and unhealthy.

The defendant denies the principal allegations of the plaintiff's complaint as to the failure of defendant to deliver, or offer to deliver the foxes as contracted, and sets forth the contract, which he claims was the whole contract, between the plaintiff and defendant, which reads as follows:

"THIS AGREEMENT made this 29th day of August, 1925, by and between the Portland Silver Fox Farms of Portland, Oregon, and H. C. Klinge, of Oakland, Oregon, is as follows:

"The Portland Silver Fox Farms agrees to sell and H. C. Klinge agrees to purchase one male and one female registered and pedigreed silver foxes, for the sum of $2000.00, Two Thousand Dollars, $300.00 cash; $1500.00 assignment of equitable savings & loan certificate to be transferred September 6th, 1925, to Portland Silver Fox Farms, $2,000.00 October 1st, 1926.

"The Portland Silver Fox Farms agrees that they will select the foxes purchased under this agreement with a view to their fur qualities, size and prolificness of the strain from which they come, and shall so mate them that there will be no inbreeding. The purchaser agreed to accept the selection so made providing that the foxes come up to the standard specified in this agreement.

"The Portland Silver Fox Farms guarantees that foxes purchased under this agreement will breed true to color, and should they throw any off color pups they will replace them with pure bred registered foxes.

"The Portland Silver Fox Farms agrees to provide suitable ranching accommodations on their ranch for the foxes purchased under this agreement for one breeding season from date to October 1st, 1926, for the sum of One hundred fifty dollars, guarantee to deliver as many pups to the purchaser as the average number of pups raised on their ranch this season.

"It is Mutually Agreed that time is the essence of this contract; that in event the purchaser fails to make the payments herein set forth, all monies will be forfeited as liquidated damages to the Portland Silver Fox Farms.

"It is Understood and Agreed that the ownership of the foxes mentioned in this agreement shall remain

in the Portland Silver Fox Farms until the full purchase price is made.

"IT IS FURTHER SPECIFICALLY UNDERSTOOD AND AGREED that no statements or representations made relating to the Portland Silver Fox Farms other than those made in this contract shall be binding upon the Portland Silver Fox Farms, and no agreements or conditions not herein contained shall be binding upon either party hereto.

"IN WITNESS WHEREOF the parties hereunto have set their hands and seals the day and year first above written.

"PORTLAND SILVER FOX FARMS,

"G. U. FLINT,

"Representatives.

"By F. E. BLEICH,

"H. C. KLINGE,

"Purchaser."

Defendant alleges that under the contract the plaintiff paid $1,600 to defendant, but has otherwise failed and refused to carry out the terms of the contract; that defendant complied with the terms of the contract on his part.

The trial court made the following findings of fact:

"That on August 29th, 1925, the defendant agreed to sell to the plaintiff one male and one female silver fox of the best silver fox breed and superior to any other silver foxes on the market, of good size and having over fifty per cent of silver, strong, healthy, prolific, tame, raised on his Portland Fox Farm, properly breed, feed and take care of the same with their offspring until October 1st, 1926, and then deliver such foxes, together with two registered and pedigreed pups of the same breed, kind, character and nature, for the sum of $2150.00, with a discount of $200.00 if $1600.00 were paid on or before September 6th, 1925, and the remainder of such purchase price to be paid on or before October 1st, 1926;

"That before said September 6th, 1925, the plaintiff paid to the defendant the sum of $1600.00 on account of said purchase price, breeding, feeding and care;

"That on said October 1st, 1926, the plaintiff demanded the delivery of such foxes and pups to him, and the defendant was unable to and refused to deliver the same, and upon such refusal, the plaintiff demanded of the defendant the repayment to him of the said $1600.00, which repayment the defendant refused and has not paid."

It is contended on behalf of defendant that the plaintiff had no right to rescind the contract and, in effect, that the written contract contained all of the stipulations of the parties.

Section 8167, Or. L., provides that the contract for the sale of goods may be made in writing; or by word of mouth; or partly in writing and partly by word of mouth. It will be noticed that the written contract is somewhat vague as to the description of the foxes to be delivered. The defendant agrees they will select the foxes "with a view to their fur qualities, size and prolificness of the strain from which they come, and shall so mate them that there will be no inbreeding." The purchaser agrees to accept the selection so made, provided the foxes come up to the standard specified in this agreement. No other standard is specified, except that they be registered and pedigreed silver foxes.

Section 8178, Or. L., subdivision (2), provides, "where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not) there is an implied warranty that the goods shall be of merchantable quality." Subdivision (6) reads: "An express warranty or condition does not negative a warranty

or condition implied under this act unless inconsistent therewith.''

Section 8230, Or. L., provides the remedies for breach of warranty, and subdivision (1) provides where there is a breach of warranty by the seller, the buyer may, at his election: * * (d) ''rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price of (or) any part thereof which has been paid.''

The testimony leads us to believe that the same warranted the trial court in finding that the defendant was unable to and refused to deliver the foxes as agreed; that those offered by the defendant for the plaintiff were sickly and had been improperly fed and were inferior in grade; that the fur contained only about 20 or 25 per cent silver when it should have contained about 50 per cent silver, and had ''rust.''

It appears that defendant had delivered several foxes from their farm that season and those remaining were what might be termed culls.

Defendant relies upon the last clause of the written contract to exclude any testimony in regard to the agreement other than expressed therein. The case of *Hetrick* v. *Gerlinger Motor Co.*, 84 Or. 133, 138 (164 Pac. 379), was a suit to rescind a contract of sale on the ground of misrepresentation as to a motor truck sold by defendant to plaintiff. The memorandum of sale signed by plaintiff and the manager of the motor company contained the following clause: ''It is understood by the parties hereto that there are no understandings or agreements, verbal or otherwise, other than those printed or written hereon.''

It was held in an opinion by Mr. Justice McCamant that it was competent for plaintiffs to offer evidence of misrepresentation on the authority of *Bouchet* v. *Oregon Motor Car Co.*, 78 Or. 230, 236 (152 Pac. 888). In the latter case there was a written order or contract with a warranty given by the seller at the time of delivery of the automobile. Plaintiff was permitted, over objections of defendant, to testify as to the representations of defendant made at the time of the sale of the car. In an opinion by former Mr. Justice Bean, we find this language at page 235:

"Under all the conditions, it was proper for the plaintiff to show by parol evidence the circumstances of the contract of sale, what representations the defendant made, what kind of an automobile was intended to be purchased, and that the defendant warranted the car"; citing many cases.

1, 2. In the case at bar the language of the memorandum made by the parties squints at the kind of foxes agreed to be sold. The language is vague and ambiguous. Under the conditions of the case, fraud being alleged, and taking into consideration the provisions of our statute above quoted, we think it was competent for the plaintiff to show by oral testimony what quality of foxes defendant agreed to sell him, and that the seller at the time of delivery failed to furnish the kind as agreed. Plaintiff was entitled under the contract to receive good merchantable silver foxes.

The contract, shown above, mentions the price of the pair of foxes as $2,000 and $150 for keeping and caring for them until the time for delivery. Plaintiff paid $1,600 on the contract. It was agreed, if he paid that amount on or before September 6, 1925, a discount of $200 should be allowed by defendant.

Defendant, in a letter written January 29, 1926, stated the amount due on the foxes, $200, besides the amount for keeping, thereby allowing the discount claimed by plaintiff. Nothing contained in the writing refers to such discount. This shows that both parties treated the contract as not containing all of the terms of the sale.

3. Defendant claims plaintiff should have elected to rescind at an earlier date when he heard that defendant did not have the kind of foxes on his farm. The defendant was entitled to take until October 1, 1926, to comply with the terms of the agreement. Plaintiff was then ready, able and willing to fulfill his part of the contract. He acted as promptly as he well could.

This case differs somewhat from a suit to rescind where the property has been sold and delivered. See 24 R. C. L., p. 18, § 279, p. 47, § 310.

We affirm the decree of the trial court.

AFFIRMED.

RAND, C. J., and McBRIDE and BELT, JJ., concur.

---

Former opinion adhered to on rehearing January 15, 1929.

ON REHEARING.

(273 Pac. 954.)

This is an action to recover, as money had and received, the sum of $1,600 paid by plaintiff to defendant on a contract for the sale by defendant to plaintiff of two foxes. The contract was made August 29, 1925; the foxes to be delivered October 1, 1926, to be kept and cared for by defendant until that time.

The purchase price of the foxes was $2,000, with a discount of $200 if $1,600 were paid on or before September 6, 1925; $150 for keeping and caring for the foxes and the balance of $350 to be paid at the time of the delivery of the foxes.

In our former memorandum of opinion the case was inadvertently designated as a suit. See *ante,* p. 144 (268 Pac. 748). The cause was tried by the court without the intervention of a jury. Findings of fact were made, stating the terms of the contract as alleged in the complaint and shown by the testimony and including, in effect, that on October 1, 1926, the plaintiff demanded the delivery of the foxes and pups to him and the defendant was unable and refused to deliver the same, and plaintiff demanded of defendant the repayment of $1,600.

FORMER OPINION ADHERED TO.

For appellant there was a brief and oral arguments by *Mr. Thomas Mannix* and *Mr. I. G. Ankelis.*

For respondent there was a brief and oral arguments by *Mr. Eugene H. Dowling* and *Mr. W. H. Powell.*

BEAN, J.—The contract, in so far as it was written, is set out in full in the former opinion. The plaintiff alleges, and the testimony tended to show, that the defendant agreed to sell the plaintiff one male and one female, silver fox, properly bred, and to feed and care for the same with their offspring, until October 1, 1926; that plaintiff should have the privilege of electing during the following spring to take either two pups, or an average of the pups, raised on defendant's farm for the season's *pro rata,* in proportion to the number of pairs of breeding foxes on

such farm. Defendant represented that the foxes were to be the best silver fox breed and strain. that could be obtained, good breeders, strong and healthy, and raised on defendant's farm at Portland, Oregon, and had become acclimated to Oregon, free from nervousness usual to foreign-born and raised foxes.

The testimony tended to show that when the plaintiff went to defendant's farm at the time specified for the delivery of the foxes, with the money to pay the balance, for the purpose of getting them, the defendant did not have the kind of fox contracted to be sold; that the plaintiff looked at all the foxes on the farm and defendant required him to choose from a pen containing less than fifteen pair; that the foxes had only 25 per cent of silver, and showed rust in the fur; were small, sickly and wild, and many on the farm had died during the year; that they had been improperly fed and cared for; that those offered had been brought down from Canada; that the defendant stated that he could not deliver a single pup on account of lack of registration; that the defendant refused to let him take one of the two best pair which approximately complied with the contract, and refused to carry out the contract.

The defendant sets forth in his answer the written agreement, and contends that the written agreement contains all the terms of the contract. Upon the trial, however, it is practically admitted that there was an agreement as to the discount of the $200 not mentioned in the contract, and that the plaintiff should have the privilege of electing to take two pups raised during the spring of 1925, instead of taking an average number.

It is contended by defendant upon the rehearing, as in his original brief, that the plaintiff was informed of the kind and quality of the foxes which

defendant had a long time before October 1, 1926, and as he did not then elect to rescind the contract he waived his right to do so.

4, 5. The defendant had a right to procure foxes that would comply with the terms of the contract at any time and from any source, until October 1, 1926. The defendant could not by any act or declaration respecting his intention not to perform compel the plaintiff to immediately seek his redress for a breach, but the latter could await the time for performance, and on breach, elect between the remedies open to him at that time.. In other words, in such cases, the right of option is given to the injured party and not to the party who is in the wrong. Where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: *Krebs Hops Co.* v. *Livesley,* 59 Or. 575, 581 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758); *Roehm* v. *Horst,* 178 U. S. 1 (44 L. Ed. 953, 20 Sup. Ct. Rep. 780).

The contract in question, it will be seen, is very obscure, vague and ambiguous. As to the kind of foxes sold, the writing only mentions "registered and pedigreed silver foxes."

6. The writing suggests that the "Portland Silver Fox Farms agrees that they will select the foxes purchased under this agreement with a view to their fur qualities, size and prolificness of the strain from which they come." This is but a faint intimation of the kind of foxes that were sold and the whole writing plainly shows that all of the terms of the contract were not embodied therein, but the contract was partly oral: 22 C. J. 1146, note 75, 1269, § 1686; *Crown Co.* v. *Cohn,* 88 Or. 642, 656 (172 Pac. 804); *Sig. C. Mayer & Co.* v. *Smith,* 112 Or. 559, 563 (230

Pac. 355). A contract may be made in writing, or partly in writing, and partly by word of mouth: Or. L., § 8167.

7. The statutory rule contained in Section 713, Or. L., that when the terms of an agreement have been reduced to writing by the parties, it is considered as containing all those terms, and therefore there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing, has its exceptions embraced therein, one of which is subdivision (1): "Where a mistake or imperfection of the writing is put in issue by the pleadings." This exception applies to the writing in question, as the same is imperfect. No one can tell from the writing itself what all of the terms of the contract were or what quality of foxes were agreed to be sold to plaintiff, or what is meant by a "silver fox": *Hetrick* v. *Gerlinger,* 84 Or. 133, 139 (164 Pac. 379).

When the contract was made there was a provision of the statute, then in force, which was practically written into the contract. Section 8178, Or. L., provides, in part, as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purposes.

"(2) Where the goods are bought by description from a seller who deals in goods of that description

(whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

The defendant, in his brief, on petition for rehearing, asserts: "Now as long as this express contract exists, no implied contract can arise between the parties."

8. This contention is not in harmony with the provision of subdivision (6) of Section 8178, Or. L., above quoted. It is plain that the implied warranty of the merchantable quality of the foxes is not inconsistent with the description of the registered and pedigreed silver foxes contained in the written contract, nor with the intimation in the contract that the foxes would be selected with a view to their fur qualities, size and prolificness. Both expressions in the writing and the implied warranty can and should be read together: *Durban* v. *Denham,* 106 Or. 34, 37 (210 Pac. 165, 29 A. L. R. 1227); *Pendergrass* v. *Fairchild,* 106 Or. 546 (212 Pac. 963).

The complaint alleged and the testimony tended to show a breach of the contract on the part of the defendant failing and refusing to deliver the foxes as agreed.

9. The court found, in effect, that there was such a breach. The findings of the court are of the same force and effect as the verdict of the jury and, therefore, we are not permitted to review the facts, except so far as to find that there was substantial competent evidence to support the verdict. This proposition needs no citation of authority.

Where there is a breach of a warranty by the seller, the buyer, in this case, Klinge, may at his

election, (a) accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; (b) accept or keep the goods and maintain an action against the seller for damages for the breach of warranty; (c) refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty; (d) rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price of any part thereof which has been paid: Section 8230, Or. L.; *Feeney & Bremer Co.* v. *Stone,* 89 Or. 360 (171 Pac. 569, 174 Pac. 152).

10, 11. In the present case, plaintiff by his pleadings and testimony and under the findings of the court had a right to rescind the contract to sell and to refuse to receive the goods which had not been delivered. This he elected to do and to recover the part of the price which had been paid: *Pendergrass* v. *Fairchild.* It is in evidence that a silver fox, such as described in the writing, should be not less than 50 per cent silver, while those offered plaintiff were only 25 per cent silver. Therefore, the testimony indicated that the foxes defendant offered to plaintiff did not comply with the written part of the contract and that defendant breached the contract as the trial court found.

12. No one would seriously contend that if a butcher should contract to purchase one steer and one cow from a cattle raiser for $200, to be delivered by the seller at a certain time, that the seller could comply with the contract by offering to deliver a poor,

skinny cow and a sickly steer, unfit for beef. The value or price fixed in the writing indicate that the foxes agreed to be sold were of a good quality. It did not indicate that plaintiff was contracting for the foxes for their pelts: *Ward* v. *Jensen,* 87 Or. 314, 319 (170 Pac. 538); *Greig* v. *Interstate Investment Co.,* 121 Or. 15 (253 Pac. 877).

13. It is a well-settled rule that where an action is tried by the court without a jury, the introduction of immaterial or incompetent evidence is not reversible error, as it is presumed that the court rejected the incompetent evidence and based its finding upon the competent evidence, where there is the latter kind of evidence in the case. Counsel for defendant requested the court to make the findings favorable to defendant.

The testimony in the case supports the verdict and judgment. Finding no reversible error in the record, the judgment is affirmed.          AFFIRMED.

McBRIDE, RAND AND ROSSMAN, JJ., dissent.