Argued April 6; affirmed May 16; rehearing denied June 13, 1933

## BRADEN v. HALL

(21 P. (2d) 1094)

*Arthur A. Goldsmith* and *E. L. McDougal,* both of Portland, for appellant.

*William D. Bennett,* of Portland, for respondent.

BAILEY, J.  On March 12, 1931, the plaintiff and the defendant addressed a letter, hereinafter, for brev-

ity, referred to as an escrow agreement, to the United States National Bank of Portland, Oregon, reading as follows:

"This escrow agreement hereby entered into this 12th day of March, 1931, by and between A. E. Braden, party of the first part, and Charles Hall, party of the second part, is in words and figures as follows, to wit:

"The party of the first part herewith places with you 850 shares of the common stock of the Conservation Corporation of America, being

"Certificate No. 24 for 50 shares
"Certificate No. 28 for 100 shares
"Certificate No. 29 for 500 shares
    issued to A. E. Braden and endorsed in blank
"Certificate No. 35 for 100 shares
    issued to C. F. Walker and endorsed in blank
"Certificate No. 36 for 100 shares
    issued to C. Ades and endorsed in blank

and as assignment of a claim of A. E. Braden against the Conservation Corporation of America for the sum of $5,000.

"The party of the second part herewith pays to the party of the first part, $250, the receipt of which is hereby acknowledged, and agrees to pay to the party of the first part, on or before ten days from date, the sum of $7,350, and the sum of $7,600 on or before twenty days from date hereof.

"It is understood and agreed that upon the payment to the bank, for the benefit of the first party, by the second party, of the sum of $7,350 within ten days from date, and the further sum of $7,600 on or before twenty days from date, as hereinbefore provided, that the United States National Bank is authorized and directed to transfer the aforesaid stock and assignment of the claim of $5,000 to Charles Hall or his assigns.

"It is further understood and agreed that should the said Charles Hall fail to pay to A. E. Braden on or before ten days from date, the aforesaid sum of $7,350, the said A. E. Braden at his option may withdraw the

aforesaid assignment of claim against the Conservation Corporation and all of the aforesaid stock with the exception of 15 shares, which said 15 shares shall be delivered to the said Charles Hall.

"It is further understood and agreed that when the said Charles Hall pays to A. E. Braden, on or before ten days from date, the aforesaid sum of $7,350, the United States National Bank shall deliver to said Charles Hall the aforesaid assignment of a claim against the Conservation Corporation of America, and 200 shares of the common stock hereby escrowed, of the said Conservation Corporation of America.

"It is further understood and agreed that should the said Charles Hall fail to pay to A. E. Braden on or before twenty days from date, the aforesaid sum of $7,600, the said A. E. Braden at his option may withdraw the balance of the aforesaid stock hereby escrowed.

"It is agreed that the United States National Bank shall have a lien upon the property hereinbefore described for its escrow charges, and for any moneys advanced or expense incurred in caring for and handling said property, and in the event the bank becomes involved in litigation by reason of said escrow it may employ counsel, and the reasonable fees thereof together with the costs of such litigation shall be covered by said lien and paid by the undersigned".

The certificates for the shares of stock, endorsed in blank, and an assignment of the claim of Braden against the Conservation Corporation of America were delivered with the letter to the United States National Bank. This claim, with assignment, reads as follows:

"March 12, 1931.
"Conservation Corporation of America,
"IN ACCOUNT WITH
"A. E. Braden, Cr.
Per statement previously rendered . . . . $5,000
"For value received I hereby sell, transfer and assign the within account to Charles Hall.
"A. E. Braden".

On or about March 23, 1931, Braden granted Hall an extension of time to and including April 1, 1931, within which to pay the balance of the purchase price, to wit: $14,950.

On July 22, 1931, the plaintiff Braden wrote four separate letters to the bank with reference to the escrow hereinbefore mentioned. The order in which these letters were written is not disclosed. For the sake of clarity they will hereafter be designated as letters A, B, C and D. They appear in the following order and wording, attached to defendant's answer as exhibits:

A. "In reference to escrow instructions given you under date of March 12, 1931, under the terms of which 850 shares of common stock of Conservation Corporation of America were placed in your hands as escrow agent as well as an assignment of a claim of A. E. Braden against the Conservation Corporation of America in the sum of $5,000, you are hereby further instructed as follows:

"Out of the first moneys coming into your hands as the result of this escrow, after payment of your claims and charges as specified in your instructions of March 12, you are to pay Arthur A. Goldsmith, 502 Pacific Building, Portland, Oregon, the sum of $400.

"In accordance with the escrow instructions which you now have, I am authorized at any time to withdraw the above described stock and the assignment of claim. I herewith wish to modify that authority to the effect that my right of withdrawal of this stock shall be subject to the written approval of Arthur A. Goldsmith or the delivery to you of receipt from Mr. Goldsmith of the sum of $400.

"If within ninety days of the date hereof I do not deliver such receipt from Mr. Goldsmith or you do not receive funds from which Mr. Goldsmith can be paid the sum of $400, you are hereby authorized to deliver to Mr. Goldsmith Certificate No. 24 for 50 shares, Certificate No. 28 for 100 shares and Certificate No. 29 for 500 shares of said stock".

B. "Notwithstanding anything to the contrary, except the letter given you today for the protection of Arthur A. Goldsmith, you are hereby authorized to deliver all of the stock of the Conservation Corporation of America, which I have previously deposited with you under date of March 12, 1931, to Dr. A. F. Suther, as well as 32 additional shares of such stock handed you herewith, represented by Certificate No. 69, upon payment to you for my account of the sum of $7,497, at least one-half of which shall be cash, and the balance may be in the form of a negotiable promissory note signed by said Suther, due within 90 days from date of delivery of said stock, which note may be payable to bearer, or to a third party, but endorsed to me, the note to bear interest at 8 per cent per annum payable at maturity. The delivery by you of my stock to Dr. Suther shall constitute my election to withdraw same under the instructions of March 12, 1931.

"I am also delivering to you herewith an additional 15 shares of said stock, represented by Certificates Nos. 4, 41 and 47 for 5 shares each, all endorsed in blank, to be delivered by you to Chas. Hall subject to the terms of the escrow agreement of March 12, 1931".

C. "With reference to escrow number 8934, you are further instructed that, subject to the rights of Arthur A. Goldsmith, as shown by my letter of even date, and prior to any election on my part to withdraw said stock and assignment, you are authorized to deliver said stock and assignment to Chas. Hall subject to the terms of said escrow instructions of March 12, 1931, notwithstanding more than 20 days has expired since March 12, 1931".

D. "I herewith hand you Certificate No. 25 for 32 shares common stock of Conservation Corporation of America issued to A. E. Braden and endorsed in blank.

"In my letter to you of this date, Certificate No. 69 for 32 shares was handed to you with instructions to deliver the same to Dr. A. F. Suther under certain conditions. The above mentioned Certificate No. 25 for 32 shares shall likewise be delivered by you to Dr.

Suther upon payment at the rate of $8.50 per share under the same terms as instructed concerning Certificate No. 69, namely, the payment for one-half the purchase price in cash, and the balance by note.

"I reserve the right to withdraw from your above numbered escrow said Certificate No. 25 for 32 shares any time on July 24, 1931, or thereafter.

"It is agreed that the Certificate No. 25 for 32 shares shall not be applicable for sale to Chas. Hall.

"In the event Dr. Suther desires to purchase only 900 shares of the above mentioned stock, you will please accept payment therefor and explain to Dr. Suther that you will have the above Certificate No. 25 transferred into certificates for the proper number of shares to equal 900 shares".

On the failure of Mr. Hall to pay the balance of the purchase price, the plaintiff instituted this action on September 29, 1931, and in his complaint referred to the escrow agreement and the payment of $250 by the defendant to plaintiff at the time of the execution thereof, the extension of time for paying the balance until April 1, 1931, and the further payment of $750 by defendant. Plaintiff alleges that he had not withdrawn said stock certificates or the assignment, and that the same had at all times been in the hands of the escrow agent, ready for delivery to the defendant upon payment of the sum of $14,200. It is further alleged that plaintiff had at all times been ready, willing and able to deliver said stock and said assignment to the defendant upon payment of the balance of the purchase price. The escrow agreement hereinbefore mentioned is attached to and made a part of the complaint. Plaintiff asked judgment for the balance of the purchase price.

In his answer the defendant admitted the signing of the escrow agreement, the deposit of the stock and assignment of claim with the bank, and the payment

of $250, but denied payment of the sum of $750 or any other amount in excess of the $250 paid at the time of signing the escrow agreement.

As a further and separate answer and defense the defendant alleged that the escrow agreement was intended as an option and had always been treated as such by the parties concerned. For a second affirmative defense the defendant alleged that on March 12, 1931, the plaintiff was, or claimed to be, the owner of 850 shares of stock in the Conservation Corporation of America and owner of a certain contract for the payment of money by the corporation to plaintiff; that the plaintiff falsely and fraudulently and with intent to defraud the defendant, represented to him that the stock was worth $15 per share and that the contract with said corporation for payment of $5,000 to plaintiff was a good and valid contract with no defense thereto, and would be paid when due. Defendant further averred that plaintiff represented that said stock had a market value and that because plaintiff was in need of money he would sacrifice the stock at $12 per share; that all statements made by plaintiff in this connection were false and known by him to be false; that the consideration for the contract with the Conservation Corporation had failed; that the said corporation had a good defense thereto; and that said contract was of no value.

As a third defense it is alleged that the plaintiff at all times subsequent to July 22, 1931, elected to treat said escrow agreement as of no effect, as evidenced by his communications to the bank, designated in this opinion as letters "A," "B," "C" and "D," and that by virtue thereof plaintiff had exercised his option in regard to the withdrawal from escrow of the certificates of stock and the assignment of claim.

At the commencement of the trial of the case it was apparently agreed by counsel for the litigants that the case should be tried as a suit in equity, with the understanding that the plaintiff should proceed with the evidence in support of the allegations of his complaint.

On the trial, only one witness was called, H. W. Lenz, manager of the escrow department of the bank. His testimony was to the effect that the certificates of stock and the assignment of claim had not been removed from the bank and that the bank at all times since March 12, 1931, and at the time of trial, was in a position to deliver the stock and assignment of claim upon the payment of $14,200, and would have delivered the same to defendant Hall upon the payment of that sum, regardless of the lien which it had on the stock for its services. Mr. Lenz further testified that notice of garnishment had been served on the bank in an action against the plaintiff; and that if defendant and Dr. Suther had both appeared at the escrow department of the bank at the same time and produced sufficient amounts of money to pay for their stock under their respective alleged options or contracts, he would not have known to whom to deliver the stock. He testified also that no money had been paid to the bank by the defendant and that no receipt had been delivered to the bank showing payment of the $400 to Mr. Goldsmith.

There was no evidence whatsoever that the defendant had paid any sum of money in excess of the $250 paid on March 12, 1931. Neither was there evidence of any understanding between the plaintiff and the defendant other than the escrow agreement hereinbefore set out.

When plaintiff rested, the defendant moved for a judgment of involuntary nonsuit, which was granted by

the court. Before the judgment was entered, however, the court granted the defendant permission to file a supplemental answer, to conform to the proof, and such an answer was filed by defendant, in which he alleged that subsequent to the institution of the action the time limit within which the bank was to turn over certain certificates of stock to Mr. Goldsmith as specified in letter "A" (dated July 22, 1931) had expired; that no receipt for $400 had been delivered to the bank and that the bank had not received any funds from which to pay the $400 to Mr. Goldsmith, with the result that said stock since October 20, 1931, had been the property of Mr. Goldsmith.

The only error assigned is the action of the trial court in granting the defendant's motion for a judgment of involuntary nonsuit.

■ Plaintiff contends that the escrow agreement hereinbefore set out *in extenso* constituted a binding contract between the plaintiff and the defendant; that the plaintiff has fully performed his part of the contract; and that upon the failure of the defendant to perform, the plaintiff had an election of three remedies, to wit: (1) to hold the property for the defendant and to recover from him the entire purchase price; (2) to sell the property after notice to the defendant, as his agent for that purpose, and recover the difference between the contract price and that realized at the sale; or (3) to retain the property as his own and recover the difference between the contract price and the market price at the time and place of delivery. He asserts that he has chosen the first alternative.

In support of the foregoing rights of the seller, plaintiff refers to and relies upon *Krebs Hop Co. v. Livesley*, 59 Or. 574 (114 P. 944, 118 P. 165, Ann. Cas.

1913C, 758), and *Klinge v. Farris,* 128 Or. 142 (268 P. 748, 273 P. 954). In the first mentioned precedent this court quoted from the opinion in an Illinois case as follows:

"It is well settled that, where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: (1) He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing".

The second case cited refers to and adopts the principle approved in *Krebs Hop Co. v. Livesley,* supra.

In the case at bar the plaintiff is suing for what he contends is the balance of the purchase price of the stock and claim. On April 1, 1931, the defendant, according to plaintiff's contention, was to pay the entire balance of the purchase price. What occurred between that time and July 22 of the same year is not clear. On the latter date, however, the plaintiff treated the bank as no longer the agent of both parties but exclusively answerable to the plaintiff and his directions. The four letters written by plaintiff to the bank on that date do not show an intention on the part of plaintiff to keep the contract at all times alive for the benefit of both parties. On the contrary, by those letters the plaintiff evidenced a desire to permit the defendant to receive the certificates of stock and the assignment of claim, provided the defendant paid the balance of the pur-

chase price before the stock was purchased by Dr. Suther or before a large part of it was turned over to Mr. Goldsmith.

When the plaintiff granted to Dr. Suther an option to purchase the shares of stock upon the payment of $8.50 per share ($3.50 per share less than the amount which the defendant in his answer claims he was to pay for it), he thereby distinctly and unmistakably negatived the idea that he had elected to keep the contract alive for the benefit of both parties. The granting of this option to Dr. Suther was contradictory of the position now assumed by the plaintiff. As further evidence of the fact that plaintiff had not elected to keep the contract alive for both parties is the lien given to Mr. Goldsmith on the stock, coupled with the instructions to the bank that in the event Mr. Goldsmith was not paid in cash the amount of his lien within ninety days from July 22, 1931, the bank was to transfer and deliver to him certificates for 650 shares of the stock in escrow.

No attempt was made by the plaintiff to show that he in fact had been damaged by defendant's failure to pay the balance of the purchase price. Nor is there evidence of any claim that the plaintiff was attempting to sell the stock and assignment of claim to someone other than the defendant with the intention of holding the defendant liable for the difference between the price stated in the escrow agreement and the amount realized on sale. When the defendant did not pay the balance of the purchase price at the time provided in the escrow agreement, it then became the duty of plaintiff to decide upon his future course of action. His decision was made on July 22, when he treated the stock as his own.

The record is silent as to any negotiations between the plaintiff and the defendant subsequent to March 23, 1931, at which time the defendant was granted until April 1, 1931, in which to pay the full purchase price. No claim is made by the plaintiff that he notified defendant that he would proceed to sell the stock and assignment and hold the defendant liable for any loss suffered thereby. He does not contend, moreover, that the granting of an option to Dr. Suther on the same stock was with the idea of later calling upon defendant, in the event that plaintiff realized less for the stock than the amount stipulated in the escrow agreement, to reimburse him for the loss thereby suffered.

By the escrow agreement the plaintiff does not undertake to sell to the defendant any of the shares of stock represented by the certificates mentioned therein, nor does he agree to sell to the defendant plaintiff's claim against the Conservation Corporation of America. He does, however, agree that in the event the defendant pays certain sums to the bank within the times stipulated, the bank is to deliver to the defendant the certificates of stock and the assignment of claim mentioned in the escrow agreement. If the defendant, however, makes only the first payment, he is to receive certificates for 200 shares of stock and the assignment. And if he makes no payment at all, then the plaintiff has the option to withdraw the assignment and all of the certificates of stock, with the exception of certificates for 15 shares, which certificates for 15 shares are to be delivered to the defendant.

A statement of a purported indebtedness from the Conservation Corporation to the plaintiff, and the assignment thereof by plaintiff to the defendant have been set forth in full. Depositing this statement and the

assignment thereof with the bank would in nowise prevent the plaintiff from making as many other assignments of the same claim to other individuals as he might desire. There is no stipulation on his part that the Conservation Corporation is indebted to plaintiff; nor does he promise that upon payment of the amount specified in the escrow agreement said claim will be transferred to the defendant.

In the event the defendant had paid the full amount stipulated to be paid by him, but the claim prior thereto had been assigned by the plaintiff and paid to some one else, the defendant would not have been in a position to maintain successfully an action against the plaintiff for damages due to plaintiff's transfer of the claim to some one other than the defendant.

Included in the list of certificates of stock delivered to the bank were certain certificates issued to individuals other than the plaintiff and by them endorsed in blank. There is no agreement on the part of the plaintiff to sell to the defendant the shares of stock represented by such certificates. Had there been such an agreement and it had happened that plaintiff had no right to transfer those certificates to the defendant, the latter by reason of said stipulation would have a right to recover damages from the plaintiff for failure to carry out his part of the contract. As the matter actually stands, since there is no agreement on the part of plaintiff to sell those particular shares, or indeed any shares of stock, the plaintiff could well assert, in case of action for breach of contract for failure to deliver the same, that he had not agreed to sell the shares of stock represented by those certificates or any other shares of stock, and that all he had agreed to was that in the event that the defendant paid certain sums of

money at certain specified times, the bank was authorized to deliver to defendant certain certificates of stock and an assignment of claim.

The cases of *Krebs Hop Co. v. Livesley,* supra, *Klinge v. Farris,* supra, and *McMillan v. Batten,* 52 Or. 218 (96 P. 675), are relied upon by the plaintiff in support of his contention that the escrow agreement here involved is valid and enforceable. In the Krebs case it is provided that the plaintiff "sells" and the defendant "buys" a certain amount of hops. The contract in the Klinge case is to the effect that one of the parties thereto "agrees to sell" and the other party "agrees to purchase" a pair of foxes of certain designated class. In the McMillan case the contract is not set out, but this court refers to it in the following language:

"By its terms several things are to be done by plaintiffs as sellers, and other things are to be done by the purchasers. It declares an agreement by plaintiffs to sell to the defendants, who are thereinafter termed purchasers, 20 shares of stock as an entirety for $2,500. Ten shares are to be delivered and paid for immediately, and 10 shares to be delivered to a third party and to be paid for within 30 days; and 'it is mutually understood that' dividends on these latter shares should go to 'said purchasers with the original ten shares and as a part thereof.' Finally, the respective parties 'agree to carry out the provisions hereof on their respective parts to be performed.' No other conclusion can be reasonably derived from such provisions but that defendants were agreeing to be purchasers".

■ It is further contended by the plaintiff that subdivisions 1 and 2 of § 64-701, Oregon Code 1930, are controlling here. Those subdivisions have reference to instances in which a sale has been made or a contract

has been entered into for the sale of goods. The first subdivision refers to cases in which the property in the goods has passed, a condition which has no application here, for the title to the stock and the claim did not pass to defendant: *May v. Emerson*, 52 Or. 262 (96 P. 454, 1065, 16 Ann. Cas. 1129) ; *Ward v. Klamath County*, 108 Or. 574 (218 P. 927). Under the second subdivision there must be a contract; and we have seen that in the case at bar there was no contract within the meaning of this section.

■ There is, moreover, another reason why the section above referred to does not apply. Section 64-701 has reference and is limited to the sale of, or agreement to sell, goods. The word "goods" as defined by the uniform sales act, § 64-806, Oregon Code 1930, "includes all chattels personal other than things in action and money". The claim of the plaintiff against the Conservation Corporation of America is a "thing in action" and is not included within the term "goods" as that word is used in the act: *Wallace Bank & Trust Co. v. First National Bank*, 40 Idaho 712 (237 P. 284, 50 A. L. R. 316). The escrow agreement here under consideration, not being divisible and including property not covered by the uniform sales act, is not governed by the provisions of that act.

The circuit court seems to have based its decision on the fact that under the provisions of letter "A" written by plaintiff to the bank on July 22, 1931, conditional title to the major part of the stock had vested in Mr. Goldsmith, to become absolute within ninety days, in the event a sufficient sum had not been paid to the bank to satisfy Mr. Goldsmith's claim, and that since this claim had not been paid, the title to the stock had vested in Mr. Goldsmith and plaintiff was unable to comply with the terms of the escrow agreement.

It is true that Mr. Lenz testified that he was at all times able and in a position to deliver the stock to the defendant upon payment of the purchase price, but it must be remembered that the authority of the escrow agent was limited to the instructions given him, and under those instructions he was not at liberty after ninety days next following July 22 to deliver the larger part of the stock to any one other than Mr. Goldsmith, as it does not appear from the evidence that the direction to deliver said stock to Mr. Goldsmith had in any way been modified or changed and the evidence is uncontradicted that a receipt from the said Arthur A. Goldsmith for $400 had not been delivered to the bank and that the bank had received no funds with which to pay the $400 or any part of that sum.

The actions of the parties to the escrow agreement indicate that they looked upon that document as merely an option to the defendant. Any other conclusion as to their construction thereof would lead to many contradictions and absurdities.

The circuit court committed no error in granting defendant's motion for a nonsuit, and the judgment appealed from is affirmed.

BEAN and CAMPBELL, JJ., concur.

RAND, C. J., took no part in the consideration of this case.