Argued October 5, affirmed November 10, 1966 ·

# BORNTRAGER *v.* McCANN ET AL

420 P. 2d 53

*Harrison M. Weatherford,* Albany, argued the cause for appellants. On the brief were Weatherford, Thompson, Horton & Jordan, Albany.

*M. M. Orona,* Lebanon, argued the cause for respondent. On the brief were Morley, Thomas, Orona & Kingsley, Lebanon.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Redding, Justices.

REDDING, J. (Pro Tempore).

This is an action to recover damages for personal injuries resulting from a rear-end collision in which a dump truck, owned by defendant Barry Construction Company and operated by defendant Clinton McCann, collided with the rear of a Volkswagen automobile being operated by the plaintiff. At the time of the collision, plaintiff, preparatory to making a lawful left turn, was stopped on the highway awaiting the passage of a string of oncoming vehicles. Defendants appeal from a judgment for plaintiff.

The trial proceeded before a jury. Upon completion of plaintiff's case in chief, defendants moved for a judgment of involuntary nonsuit, which was denied.

After both parties had rested, the defendants moved for a directed verdict. Before the court ruled on the defendants' motion, the plaintiff likewise moved for a directed verdict. Thereupon the trial judge, relying on numerous decisions of this court (since overruled by *Godell v. Johnson,* 83 Adv Sh 175, — Or —, 418 P2d 505) announced "[t]his, therefore, removes it from the consideration of the jury on all issues", to which counsel for both parties agreed. The jury was then excused and the court held in favor of the plaintiff and awarded him $7,500 general damages and $402.50 special damages.

The plaintiff in his amended complaint, filed on May 10, 1965, alleges that at approximately 4:30 p.m. on August 2, 1963, defendants' truck collided with the rear of plaintiff's vehicle.

Plaintiff further alleges that as a direct and proximate result of said collision and of the negligence of the defendants in certain specified particulars, plaintiff sustained the following injuries, to-wit:

"a) Spraining, straining and wrenching of the lower back and of the tendons, ligaments, bones, muscles, nerves and blood vessels thereof;

"b) Spraining, straining and wrenching of the cervical spine and of the tendons, ligaments, bones, muscles, nerves and blood vessels thereof;

"c) Bruising and contusing of the chest and rib cage;

"d) Spraining, straining, wrenching and bruising of the right wrist;

"e) Bruising and contusing of the head and of that portion of the central nervous system therein;

"f) Bruising and contusing of the left knee.

"That as a result of the aforesaid injuries plaintiff has suffered and will continue to suffer great pain. That plaintiff's health has been permanently

impaired in that he suffers pain and limitation of motion of the neck and pain radiating into his upper extremities. That he has been weakened and been made highly nervous and that he suffers residual central nervous system damage, the exact nature and extent of which are unknown to your said plaintiff. That plaintiff, at the time of receiving said injuries and prior thereto, had suffered from nervous tension. That said condition has been worsened and aggrevated [sic] by reason of said collision. That said injuries have permanently impaired plaintiff's health and his ability to enjoy a normal life, all to his great damage and injury in the sum of $15,000.00." ...

On May 12, 1965, defendants filed a motion as follows:

"Come now defendants and move the Court for an order requiring plaintiff to make his amended complaint more definite and certain by specifying with particularity the illness or condition which plaintiff had at the time of receiving the injuries as alleged in plaintiff's complaint, and, as a separate motion, requiring the plaintiff to make his complaint more definite and certain by specifying in what manner the existing condition or illness had been worsened or aggravated by reason of said collision, * * *."

The record fails to disclose the trial court's ruling on the foregoing motion. We assume that the motion was denied.

On December 30, 1964 defendants filed an answer to plaintiff's original complaint. We assume this answer was permitted to stand as an answer to plaintiff's amended complaint. Defendants' answer consisted of a general denial, as well as an affirmative defense charging plaintiff with four separate acts of contributory negligence. Plaintiff, by reply, denied the affirmative matters alleged in defendants' answer.

Defendants in their first assignment of error contend that the court erred in denying defendants' motion to make more definite and certain. It should be noted in passing that the trial court, immediately following the denial of defendants' motion to make more definite and certain, granted defendants' application for leave to have a physical examination of plaintiff by medical and psychiatric specialists, and defendants were allowed a continuance for such period of time as would enable defendants to arrange for and obtain such examinations.

■ Defendants, by their motion, sought to require plaintiff to make his complaint more definite and certain in two particulars, to-wit: First, to specify with greater particularity the illness or condition from which plaintiff contended he suffered at the time of and prior to receiving the injuries alleged, and second, to specify in what manner the plaintiff's condition or illness had been worsened or aggravated by said collision. It nowhere appears that the plaintiff, at the time the motion was ruled upon, had information which would have enabled him to be more specific if the motion had been allowed. While the term "nervous tension" used by plaintiff in his complaint is not a medical term, it is, nevertheless, commonly used by laymen to describe a variety of conditions or illnesses relating to the nervous system. Webster's New International Dictionary, Second Edition, gives the following, among other definitions, for "tense": "tense, * * * feeling or evincing nervous tension; mentally strained or high-strung; as, *tense* anxiety." Where, as here, defendants were by court order granted leave to have a physical examination of plaintiff by medical and psychiatric specialists, we see no error in the denial of defendants' motion.

The defendants' second assignment of error concerns the admission, over objection, of portions of the testimony of Dr. Jens. The thrust of defendants' objection rests upon two grounds. First, that it was error to permit Dr. Jens to express an opinion as to brain damage caused by the accident without sufficient foundation on which to base such an opinion, and second, upon the further ground that it was error to permit Dr. Jens to express an opinion as to brain damage caused by the accident, except in response to a hypothetical question.

In considering defendants' objection to the testimony of Dr. Jens, it will be necessary to examine portions of the testimony of the doctor admitted over objection, as well as certain facts concerning the doctor-patient relationship that existed between Dr. Jens and the plaintiff.

Plaintiff, a resident of Lebanon, suffered from a nervous disorder, and in 1954 was referred by his local family physician to Dr. Jens, a medical doctor specializing in the practice of psychiatry, in Salem, Oregon. With the exception of an interval of a year or 18 months during said period, plaintiff continued as a patient of Dr. Jens from 1954 until the time of the accident. During this period of more than nine years, the frequency with which plaintiff consulted Dr. Jens varied from time to time, depending upon his mental or nervous condition at the particular time. Plaintiff last consulted Dr. Jens prior to the accident on June 8, 1963. Concerning plaintiff's physical condition on that date, Dr. Jens testified:

"A Well, I was about to dismiss him because he was taking no medication and he was well and the mill was on strike but it wasn't distressing him too much and he was busying himself about the

house and doing odd jobs at the time and, in essence, he was close to well, if not well."

Plaintiff next consulted Dr. Jens on September 20, forty-nine days after the accident, at which time Dr. Jens testified concerning plaintiff's mental and nervous condition as follows:

"A   He was quiet and not as quick as usual today.

"Q   Just a moment. What do you mean by 'not as quick as usual'? His responses or what?

"A . Yes, his responses, his general manner of replying, his ability to be alert and consider what was said and then assimilate it and come back with a reply.

\* \* \* \* \*

"Q   So you noticed that something wasn't right. Now, did he tell you anything about his accident, he volunteer this?

"A   No, he didn't volunteer because he didn't tie the two together but on questioning I did learn that he had had an auto accident. Attempting to see why there was this slowing and why there was this difference and in questioning him about a number of things I found that he had been injured in an automobile accident.

\* \* \* \* \*

"Q   \* \* \* So then you did feel that he required continuing medical attention?

"A   Yes, I did, and full assay of why he had the symptoms he did.

"Q   And you checked him over again then, did you?

"A   Yes. I did a neurological examination and ordered an electroencephalogram."

Concerning the results of the electroencephalogram, Dr. Jens testified as follows as she was exhibiting the tracing to the jury:

"Q   That does show an abnormality that you are now showing?
"A   Yes.

\* \* \* \* \*

"Q   Now, Doctor Jens, what does this abnormal reading suggest to you?
"A   Inspite [sic] of the fact that Mr. Borntrager seemed not to have recollection for it, I think he had a head injury at the time of the accident, and moreover, it's not extraordinary to not have recollection for it. It is more the usual to not recall it.

\* \* \* \* \*

"Q   Now, you say that in 1958 you had made an electroencephalogram?
"A   That is correct.

"Q   And you found no abnormality at that time. You made one in October of 1963 and found this abnormality.
"A   No, I'm sorry. That was September of 1963.

\* \* \* \* \*

"Q   Incidentally, did you find this abnormality both in September of 1963 and then when you took the other one in 1964, was it?
"A   Yes. There was some improvement in the one in 1964. However, both of them were unsatisfactory insofar as good function is concerned relative to that of 1958, which was a normal record.

"Q   Now, did you then treat Mr. Borntrager for this condition?
"A   Yes, I did.

"Q   Did you give him any medication?
"A   Yes, I did.

\* \* \* \* \*

"Q  Did you continue his treatment or did you continue to see him over a period of time?

"A  Yes, I have been seeing him regularly. In fact the last time I saw him was in September of this year." (This testimony was given on November 22, 1965.)

\*  \*  \*  \*  \*

"Q  Have you an opinion with any reasonable medical certainty as to whether or not whatever problems you have found with Mr. Borntrager which in your opinion are related to this accident will continue for some indefinite time in the future?

"A  I think that's a reasonable statement.

"Q  What, that they will or will not?

"A  That they will continue for an indefinite time in the future."

It must be conceded that the foundation on which Dr. Jens based her opinion as to the accident causing damage to plaintiff's brain was insufficient, and that the doctor's opinion in said regard should have been elicited by hypothetical questions. We must therefore decide whether, under the circumstances, the trial court's failure to sustain the objection interposed by defendants constituted reversible error necessitating the granting of a new trial.

The record discloses that evidence of the following facts was before the court and jury at the time the court made the questioned ruling. Other than the accident with which we are here concerned, the plaintiff suffered no injury between June 8, 1963, the date on which plaintiff last consulted Dr. Jens, and September 20, 1963, the date on which Dr. Jens observed plaintiff's changed condition. While the plaintiff had no recollection of striking his head in the accident, the uncontradicted testimony of a disinterested witness disclosed that for some time after alighting from his

car following the accident, plaintiff was dazed. This was confirmed by plaintiff's testimony that he had no recollection of receiving his other injuries, which testimony stands uncontradicted. These other injuries were extensive and some were severe in nature. The uncontradicted evidence establishes that plaintiff's injuries, other than brain damage, consisted of an injury to his left leg, left foot, low back, neck, right arm, right wrist, numbness in his right hand, headaches, and a scratch or cut on his face which was bleeding at the scene of the accident. All of the foregoing injuries were found by Dr. Denker and Dr. Stanwood to exist following the accident. Plaintiff later developed shingles which, in the opinion of Dr. Stanwood, were caused by the accident. At the time of the trial, more than two years after the accident with which we are here concerned, plaintiff continued to suffer from some of these injuries. Then, too, the circumstances of the accident show that defendants' dump truck, loaded with five yards of dirt, struck the rear of plaintiff's Volkswagen with such force that the front seat thereof occupied by plaintiff was torn loose and plaintiff was catapulted into the rear seat. Plaintiff's Volkswagen automobile was extensively damaged requiring major repairs.

This court has repeatedly and consistently held that unless it reasonably appears from the record that incompetent evidence erroneously admitted influenced the trial court in its decision of the case, on appeal it will be presumed, in absence of indications to the contrary, that the trial judge disregarded such incompetent evidence. *Bakkensen v. Hancock M. Life Ins. Co.*, 222 Or 484, 353 P2d 558 (1960); *Shepherd v. Allingham*, 132 Or 684, 288 P 210 (1930); *Klinge v. Farris*, 128 Or 142, 268 P 748, 273 P 954 (1929). We

hold that the admission of Dr. Jens' testimony, over objection, does not, under the circumstances, constitute reversible error in the instant case.

■ The defendants, in their third assignment of error, complain that the court erred in denying defendants' motion for nonsuit, and in their fourth assignment of error, urge that the trial court erred in denying their motion for directed verdict. No purpose would here be served by an extended review of the evidence. Suffice it to say, that during daylight hours while traversing a stretch of paved highway that was straight and dry, the defendants drove their loaded dump truck into the rear of plaintiff's Volkswagen which had been lawfully stopped upon the highway for a period of 10 or 15 seconds before being hit. Plaintiff was necessarily stopped upon the highway awaiting a break in an oncoming line of traffic that he might safely make a left turn. Defendant driver admits seeing plaintiff's vehicle stopped immediately adjacent to the center line of the highway; that plaintiff's brake light was on showing that he was stopped, and that a blinking light was also being given indicating plaintiff's intention to make a left turn. The correctness of the trial court's finding in plaintiff's favor is so obvious no authority need be cited in support thereof.

The judgment is affirmed.