Argued October 28, affirmed November 20, 1963

## COLEMAN *v.* COLEMAN
### 386 P. 2d 811

*J. R. Campbell,* John Day, argued the cause for appellant. On the brief were Yokom & Campbell, John Day.

*William M. Holmes,* Bend, argued the cause for respondent. On the brief were De Armond, Goodrich, Gray & Fancher, Bend.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendant, wife, from a decree of divorce and child custody that was entered by the circuit court in a suit which the plaintiff, husband, instituted. The complaint charged the defendant with cruel and inhuman treatment. It prayed

"2. That the plaintiff be given the care, custody, control and education of Ronnie Lee Coleman, the minor son of said marriage, for the months of January, February, March, April, May, August, September, October, November and December and that the defendant be given the custody of said Ronnie Lee Coleman for the months of June and July.

"3. That the defendant be given the care, custody, control and education of Kelly Linn Coleman and that upon obtaining the age of three years, that the plaintiff be granted custody of said child during the month of August of each year."

The answer, in addition to denying plaintiff's charges of cruel and inhuman treatment, made similar charges against the plaintiff. It prayed that the custody of the two children which were born of the union be granted to the defendant.

The defendant, in appealing, does not challenge the part of the decree which awarded the divorce to the plaintiff; nor does she present any contentions concerning property rights or support money. She asks this court, however, to modify the decree so that she will be given custody of both children. The boy, Ronnie, who was awarded to plaintiff, the father, was at the time of the entry of the decree, three years of age. The girl, Kelly, who was awarded to the mother, was, at that time, 17 months of age. The defendant, in testifying, stated: "I am not saying that

the man (the plaintiff) isn't fit" to have the custody of the boy.

The trial judge who gave careful consideration to the evidence, at its conclusion rendered his decision orally. He stated in part:

"* * * The next question, of course, the most far-reaching and the most important question here, and it concerns the custody of the children. The plaintiff has admitted, of course, that the defendant is a fit and proper mother for the children. The plaintiff has conceded the fact that the mother should have the custody of the 17-month-old daughter. And I think rightly so. So I do grant to the defendant the sole care, custody, and control of her 17-month-old daughter. It is an extremely difficult decision to reach concerning the son. It does appear that the son has been with his father for some months. That there is a great deal of affection toward the son by the father, and also, I might add, a great deal of a mother's affection toward her son, also, by the defendant. But it does appear that the father is a fit and proper person to have the custody of the son and I want it clearly understood that I am not finding the mother unfit, in any way, to have the custody of the son. She is also a fit and proper person. But I do feel that the father, at the present time, is better able to offer his son a home. He's going to have the son out on the ranch working with him. The testimony was that his father is a top ranch hand, drawing top pay, and he can teach his son the ranching trade. So I am going to grant to the plaintiff the sole care, custody, and control of this minor son. Now, there has been a prayer here in the Complaint concerning splitting custody during the Summer months. I am not going to do that at the present time. Both of you parties are adults and, certainly, you should be able to work out between yourselves the visitation rights that your children should have

with the other party. And there is no reason why this Court should step into that matter of visitation rights nor of how many months the daughter should be with the father during the summertime or the son should be with the mother in the summertime. You two should be able to work that out. * * * I did very seriously consider the advisability of keeping the brother and the sister together in the same home. Of course, it did appear to the Court that the 17-month-old daughter would have the benefit of her two half-sisters in the home. It did seem that the brother would be better off with the father. Now, I will grant to the defendant the sum of $50.00 per month as assistance in the supporting of her minor daughter. That will be paid, of course, by the father. * * *"

■■ *Gonyea v. Gonyea*, 232 Or 367, 375 P2d 808, declared, as have many other decisions, that in situations such as this the welfare of the children is of paramount importance. In determining that issue this court has access, generally, to nothing concerning the parties except the silent, unspeaking record. The record displays no warmth or feeling. None of its words has more color than any other. When judged solely by her testimony, the shrew may be a better wife than a sainted mother and make a good husband appear to be a failure. The record rarely reveals anything of the parties except the words they employ while testifying. A moment in the courtroom such as the trial judge experienced is a superior index to the truth than the transcript of what the witnesses said. We do not know even so unimportant a fact as the age of either the plaintiff or the defendant. Each has been married before. The defendant is the mother of two other children—each being born in a different marriage. The plaintiff also had a previous venture in matrimony.

His employer, as a witness, spoke in terms of high commendation of the plaintiff as an employee and as a man. The employer's wife will take care of the boy, Ronnie, while the plaintiff is at work. The employer's wife is the mother of a little daughter and is a former school teacher. That arrangement appears to be very suitable.

In instances such as this where people have married, become parents, and then have entered the divorce court it is rarely possible for a court to do justice for the parties and their children.

In taking care of the little girl, Kelly, and the two children by her previous marriages, the defendant, while she works, is forced to put the children in a home that appears to be similar to a small scale day nursery. She resorted to more than one expedient before she found this home. The plaintiff (father) is anxious that his children should know each other and their parents.

Plaintiff and defendant appear to have no bad habits except the defendant displays an uncontrollable propensity to quarrel and in the course of the quarrels hurl forth groundless charges. The tense and strained atmosphere thereby created cannot be suitable for a home in which children live. Her disposition to engage in tense wrangling appears to have been the fault that brought the parties to the divorce court.

We believe that the thoughtful decree worked out by the trial judge is as good as can be accomplished in this case.

We affirm the decree.