Argued May 6, affirmed May 23, petition for
rehearing denied June 18, 1974

# HAINES COMMERCIAL EQUIPMENT CO., Respondent, v. BUTLER, Appellant.

522 P2d 472

*David C. Silven,* Baker, argued the cause for appellant. With him on the briefs were Banta, Silven, Young & Marlette, Baker.

*John L. Jacobson,* Baker, argued the cause for respondent. With him on the brief were Jacobson and Coughlin, P.C., Baker.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

TONGUE, J.

This case was filed as an action for the unpaid balance due under a contract of sale by plaintiff

to defendant of an International combine harvester and for the conversion of a John Deere combine which had originally been the "trade in" on the purchase of the International combine. The owner, as an affirmative defense and cross-complaint, alleged that the sales contract had been rescinded by mutual agreement, with the International combine returned to plaintiff and the John Deere combine returned to the defendant, and asked for restoration of the status quo by judgment against plaintiff for the amount paid by defendant on the sales contract, $3,232.26.

The court tried the issues arising from that defense separately, without a jury. The court first heard the testimony on the question of rescission. An interlocutory order was then entered that there had been a mutual rescission of the contract. A supplemental hearing was then held, at which evidence was offered by both parties on the issue of the reasonable rental value of the International combine and how much credit, if any, the defendant should have.[①]

The court then entered a finding of fact that "the net equities are in favor of plaintiff and against defendant in the sum of $1,376.74 over and above all amounts previously paid by defendant, said sum being the amount required to restore the parties to their status quo to the extent that it is equitable." Judgment was then entered in that amount. Defendant appeals. We affirm.

Defendant has assigned as errors (1) that the court erred in finding that the "net equities" were with the plaintiff and that the sum of $1,376.74 was required to be paid by defendant to restore the status quo, and

---

[①] See Johnston v. Gilbert, 234 Or 350, 354, 382 P2d 87 (1963).

(2) that the findings are not supported by any substantial, competent evidence, but were contrary to the great weight of the evidence.

In support of those assignments of error defendant contends that restoration of the status quo required the repayment to defendant of the amounts paid on the contract, $3,232.24, less the reasonable rental value of the International combine while used by defendant; that the maximum rental value if the combine had operated properly would have been four dollars per acre for the 500 acres of grain combined by defendant, or $2,000, but that this combine was a "lemon" and had so many breakdowns and was so defective that it had no rental value, but cost defendant money in repair bills and other expenses and in loss of income, and that "when those equities are considered" defendant was entitled to the return of all or substantially all of the payments made by him on the purchase price.

1. *The court is not bound by defendant's testimony relating to the extent of the defects of the combine or its rental value.*

Defendant offered extensive testimony to support his contention that the combine was so defective and broke down so frequently that it had no rental value and that, as a result of such defects, he was unable to harvest all of his own grain and was also able to do very little contract work. That testimony, however, was not uncontradicted.

Thus, plaintiff offered testimony to the effect that although there were some "problems" with the combine, the cost of at least some of the repairs was paid by plaintiff or "under the warranty"; that de-

fendant kept and operated the combine for three years during which he frequently complained, but never demanded his money back; that at the end of the three years the combine was worn out as the result of abuse and poor maintenance.

As a suit in equity, we hear this appeal de novo, with the result that we are not bound by the findings of fact by the trial judge. Nevertheless, we accord great weight to such findings when, as in this case, the testimony was conflicting. The testimony of defendant and his witnesses, when read as a cold record, makes a persuasive case. It would serve no useful purpose to summarize that testimony in detail, but we have carefully read the entire record. We must bear in mind, however, as we once recognized in *Coleman v. Coleman*, 236 Or 73, 76, 386 P2d 811 (1963), that:

> "* * * [T]his court has access, generally, to nothing concerning the parties except the silent, unspeaking record. The record displays no warmth or feeling. None of its words has more color than any other. * *. * The record rarely reveals anything of the parties except the words they employ while testifying. A moment in the courtroom such as the trial judge experienced is a superior index to the truth than the transcript of what the witnesses said. * * *"

For these reasons, after noting the direct conflict in the testimony, and after according what we believe to be proper weight to the findings of the trial judge, we conclude that we must agree with his apparent conclusion that the combine was not so defective as to have no rental value.

For the same reasons, we agree with his apparent rejection of defendant's testimony to the effect

that its maximum rental value for three years was $2,000, to be computed on the basis of four dollars per acre for harvesting the 500 acres for which the combine was used by defendant during the three year period.

It may be true that for the purpose of the custom harvesting of grain a combine can be rented for a price of four dollars per acre. It is obvious, however, that the trial court was not required to accept that evidence as reliable evidence of the rental value of equipment such as this for a period of three years, including both harvest seasons and off seasons, because under such evidence the rental value of such equipment for a three year period would depend upon the extent to which it is used by a particular purchaser or lessee despite the fact that he retains possession of it during the entire period.

2. *Testimony offered by plaintiff was competent to support the findings by the trial court.*

■ This brings us to the question whether the evidence of rental value as offered by plaintiff was, if competent, any more reliable as evidence to support the finding by the trial court that the sum of $1,376.74 was "the amount required to restore the parties to their status quo to the extent that it is equitable."

Defendant has also assigned as error the denial of defendant's motion to strike the testimony of Richard Camp, president of plaintiff corporation, who admitted that he had no "background or knowledge as to the reasonable rental value of this type of a machine for combining grain in this county." Thus, because plaintiff offered no other evidence of rental value, defendant contends that there was no evidence of rental

value other than defendant's testimony that the maximum rental value of the combine was $2,000, even if it had operated properly.

The admission of the testimony of Mr. Camp was based upon plaintiff's contention that he was the owner of the combine, the trial court holding that in such a case his "background or knowledge" of its reasonable rental value went only to the weight of his testimony. Defendant contends, on the contrary, that even the owner of such equipment cannot testify to its rental value unless he is shown to have some "background or knowledge" of its reasonable rental value.

We need not decide that question in this case, however, because we believe that the opinion by Mr. Camp that its rental value was the sum of $8,382, was incompetent for another reason.[2] It appears that this opinion was based upon the following computation, as prepared by him:

| "Paid | 6000.00 | |
|---|---|---|
| Credit | 1750.00 | |
| Balance | $4250.00 | |
| Repairs | 500. | past |
| Repairs | 400. | future |
| Total | 5150.00 | |
| | 3232.00 | Down payment |
| Total | 8382.00 | |

"This amount will put plaintiff in the same position as he was in immediately prior to sale."

[2] Neither need we decide whether the "owner testimony" rule extends to testimony by the officer of a corporate-owner of property, because that question has not been raised by defendant in this case. But see Smith v. Potomac Electric Power Co., 236 Md 51, 202 A2d 604, 609 (1964), and Salvage & Surplus, Inc. v. Weintraub, 131 So 2d 515, 516 (Fla App 1961). See also Annot., 45 ALR 1494 (1926).

Just as it is obvious that the trial court was not required to accept defendant's testimony of rental value on a "per acre" basis, for reasons previously stated, it is also obvious that the testimony by Mr. Camp, based upon these computations, was hardly a proper, much less a reliable basis for computing the reasonable rental value of this equipment. This is particularly evident when it is noted that Mr. Camp added, rather than subtracted, the amount already paid by defendant on the purchase price in arriving at a figure which he would ask the court to accept as the reasonable rental value of the equipment.

It does not follow, however, either that the trial court was required to adopt the testimony of defendant of rental value on a "per acre" basis as the only remaining evidence of rental value or that the findings and judgment of the trial court must be reversed for lack of support by any competent evidence. It will be noted that in arriving at the figure Mr. Camp considered, among other things, the depreciation in the value of the combine over the period of three years in the sum of $4,250, i.e., the difference between its original cost to plaintiff of $6,000 and the sum of $1,750. There was testimony that this represented the value of the combine at the end of that period, based upon the only offer received by plaintiff for the purchase of the combine after its return by defendant.

■ Thus, there was evidence that the difference between the original cost of the combine and its value after three years, the sum of $4,250, represented the depreciation in its value during the three year period.

Clearly, the depreciation in value of equipment during the rental period is a proper fact to be considered for the purpose of determining a fair rent to be charged for use of equipment during that period. It may be that because this sum represented the actual difference in the value of this particular equipment it was not a proper fact to be considered in determining the rental value of such equipment. We believe, however, that it was a proper fact for consideration by the trial court in this case for the purpose of computing "the sum required to restore the parties to their status quo."

Similarly, it will be noted that Mr. Camp, in his computation, also included the sum of $500 as the amount actually paid by him for repairs of the combine. Mr. Camp testified that he was "out" that amount for repairs during the "back part" of the period during which Mr. Butler had this combine and that Mr. Butler never paid him that amount.

The cost of repairing equipment, if paid by the seller of the equipment, is also normally a proper fact to be considered in determining the sum required to restore the status quo upon a rescission of the sale of such equipment, unless such expense was incurred because the equipment was defective. Although the evidence in this case is somewhat indefinite, we believe that the trial judge could have found not only that this equipment was not so defective as to have no rental value, as previously noted, but that these repairs did not include the earlier repairs made to correct defects in this combine, and that the amount paid by plaintiff for these repairs was a proper fact to be considered in

computing "the sum required to restore the parties to their status quo."

▇▪ If the trial court had limited its consideration of the testimony offered by plaintiff to these two facts, its computation would have been as follows:

Depreciation of equipment . . . . . $4,250.00
Repairs of equipment . . . . . . . . 500.00
Total . . . . . . . . . . . . . 4,750.00
Less part payments on purchase price 3,232.34
Balance payable to plaintiff by
defendant . . . . . . . . . . $1,517.66

This sum, in our opinion, is supported by competent evidence and is larger than the sum of $1,376.74, as found by the trial court to be "the sum required to be paid by plaintiff to defendant to restore the parties to their status quo." It follows that the findings and judgment of the trial court cannot properly be said to be unsupported by competent evidence or to be contrary to the evidence, as contended by defendant.

▇ Assuming, however, that the testimony of Mr. Camp relating to the rental value of the combine was inadmissible for any purpose and was improperly received, as also contended by defendant, it still does not follow that the judgment must be reversed. This is because in a case tried by a court, sitting without a jury, it is assumed that the trial judge disregarded the inadmissible evidence and relied only upon competent evidence as the basis for his findings and judgment, unless it reasonably appears from the record that the incompetent evidence influenced the trial court in its decision. *Borntrager v. McCann*, 244 Or 620, 629, 420 P2d 53 (1966), and *Thomas v. Howser*, 262 Or 351, 357, 497 P2d 1163 (1972). In this case it does not ap-

pear that the trial court was influenced in its findings or judgment by the evidence objected to.[9]

For all of these reasons, the judgment of the trial court is affirmed, with costs to neither party.

---

[9] The same is also true with reference to defendant's remaining assignments of error relating to the admission in evidence of a letter-report and opinion by one of plaintiff's other witnesses.