Argued and submitted January 11, affirmed in part and reversed and remanded in part
July 10, 1985

## METAL TECH CORP. et al,
*Appellants - Cross-Respondents,*

*v.*

## METAL TECKNIQUES CO., INC. et al,
*Respondents,*

## CHRISTIANSEN et al,
*Respondents - Cross-Appellants,*

*v.*

## PRENTICE,
*Cross-Respondent.*

## (A8008-04666; CA A29456)

703 P2d 237

298

Roger Tilbury, Portland, argued the cause for appellants - cross-respondents Metal Tech Corp. and Thomas H. Prentice, and cross-respondent Margaret M. Prentice. With him on the briefs were Mark F. Stoker, Certified Law Student, and McClaskey, Greig & Troutwine, Portland.

Michael J. Francis, Portland, argued the cause for respondent Metal Teckniques Co., Inc. With him on the briefs was Dunn, Carney, Allen, Higgins & Tongue. Portland.

Jack H. Cairns, Portland, joined in the brief of respondent

Metal Teckniques Co., Inc., and argued the cause and filed the reply brief for for respondents Clyde Equipment Company of Oregon, Seawest Equipment Company, and Convenience Leasing Company, and respondents - cross-appellants Christiansen, Warren, McConnell, Ford, D. R. Itschner and Norman Itschner.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

The controversies in this case arose from the sale of Metal Tech Corporation's assets to Metal Teckniques Co., Inc., organized to continue the operations of Metal Tech, and the sale of Metal Teckniques stock. Plaintiffs Metal Tech and Thomas Prentice, sole shareholder of Metal Tech and a shareholder of Metal Teckniques, instituted this action with three types of claims: (1) against Metal Teckniques to recover money owed on the contract for sale of the assets, (2) against all defendants for intentional interference with plaintiffs' business relationships and (3) against the individual defendants, directors and officers of Metal Teckniques, as shareholder derivative claims on behalf of Metal Teckniques to recover for defendants' breach of fiduciary duties, mismanagement and self-dealing.

In its answer, Metal Teckniques asserted a counterclaim for rescission of the contract for sale of the assets on the ground that it was induced by plaintiffs' misrepresentations. The individual defendants asserted counterclaims against plaintiffs and Margaret Prentice for violation of the Oregon Securities Law and common law fraud in connection with the sale of Metal Teckniques' stock. On the parties' stipulation, trial was held first on Metal Teckniques' counterclaim for rescission. The trial court granted rescission as to many of the transactions associated with the sale of the assets. That decision rescinded most of the transactions on which plaintiffs based their contract claims, including T. Prentice's receipt of Metal Teckniques stock as partial consideration for the sale of Metal Tech's assets. The court subsequently granted the individual defendants' motion for summary judgment on T. Prentice's shareholder derivative suit and on defendants' counterclaims against plaintiffs for violation of the Oregon Securities Law and common law fraud. The court also entered judgment in favor of M. Prentice on the third-party claims against her for securities law violations and common law fraud. Plaintiffs appeal from the judgment, and defendants cross-appeal.

Plaintiffs' first assignment contends that the trial court erred in decreeing rescission on Metal Teckniques'

counterclaim.[1] Metal Teckniques alleged that the sale of Metal Tech's assets was induced by plaintiffs' misrepresentations. T. Prentice first approached some of defendants to discuss the sale of Metal Tech. Toward the end of 1978, during the course of those negotiations, he gave defendant Ford a document labelled "Partial Statement of Operations" (Exhibit 1) covering the period 1972 through 1977. Metal Teckniques alleged that that document misrepresented Metal Tech's financial condition in that it omitted operating losses which were due to a bad debt and contained inflated sales figures to show a net profit instead of an actual loss for three of the years. Defendants declined to purchase Metal Tech but ultimately agreed to purchase its assets, relying, they claim, on those misrepresentations.

■■ Plaintiffs contend that the omission of the bad debt loss, which was due to an uncollectible judgment of $84,000, could not have been material to Metal Teckniques' decision to buy Metal Tech's assets. Defendants presented evidence that the misrepresentation was material to the decision to purchase the assets, because they intended to continue to operate Metal Teckniques essentially as Metal Tech had been operated; Metal Tech's financial condition therefore was important. The trial court found that the representation was material. Plaintiffs also asserted that Metal Teckniques' reliance on the statement was not reasonable, because it was labelled "partial." The word "partial" on Exhibit 1 has a line drawn through it. Ford testified that T. Prentice crossed the word out and represented the statement as complete; Prentice denies that. The court found that T. Prentice made the misrepresentation and that Metal Teckniques' reliance was reasonable. Although we review this equitable claim *de novo,* ORS 19.125, we accord great weight to the findings of the trial court when the evidence is conflicting and resolution of factual disputes turns on a determination of witnesses' credibility. *Haines*

---

[1] Plaintiffs' second assignment claims that the trial court erred in denying their motion to dismiss Metal Teckniques' counterclaims because of its failure to obtain a certificate of authority to conduct business as a foreign corporation in Oregon. ORS 57.745. The trial court correctly decided that plaintiffs had waived the defense of lack of capacity to sue by failing to include it in a pre-answer motion or in their answer. ORCP 21G(2). For this reason, we do not need to decide whether assertion of a counterclaim is equivalent to maintaining "any action, suit or proceeding" prohibited by the statute, or whether Metal Teckniques transacted sufficient business in Oregon to be within the statutory prohibition.

*Com'l Equip. Co. v. Butler,* 268 Or 660, 664, 522 P2d 472 (1974). The trial court's findings on the disputed evidence in the trial of Metal Techniques' counterclaim support its granting defendants rescission. We affirm the rescission.

Plaintiffs assert that the trial court erred by entering a judgment on the rescission counterclaim that allowed Metal Teckniques to be restored to the *status quo ante* but declined to do the same for plaintiffs. Specifically, plaintiffs contest the trial court's refusal to award plaintiffs the fair rental value for the assets for the 25 months between the sale and the demand for rescission. In rescinding the sale of the assets, the trial court ordered that Metal Teckniques recover all of the consideration which it had paid for the assets, including over $63,000 in cash plus interest and 1,250 shares of its stock which it had transferred to T. Prentice. In addition, the court cancelled Metal Teckniques' note for over $112,000, payable to Metal Tech. The court allowed Metal Tech a $17,732 offset for some of its contract claims, representing inventory and work in progress, but denied plaintiffs rent on the equipment, because Metal Teckniques "did not obtain any benefit from the use of the assets during that period." This finding was based on the fact that Metal Teckniques lost money throughout its period of operation.

■ ■ The trial court erred in denying plaintiffs their requested relief.

> "When a contract is rescinded the parties should be restored, as nearly as possible, to their situations prior to the transaction. * * *" *Bodenhamer v. Patterson,* 278 Or 367, 376, 563 P2d 1212 (1977).

Plaintiffs are entitled to be restored to their situation prior to transfer of the assets. The fact that Metal Teckniques lost money in its operations is not determinative; the loss may have been due to mismanagement of the business or to other factors.[2] It does not mean that Metal Teckniques did not

---

[2] The individual shareholders of Metal Teckniques, other than T. Prentice, also owned and operated three other manufacturing and construction operations, which are also defendants in this action. During the last 18 months of Metal Teckniques' 25 months of operation, over 96 percent of its work was for those other companies. Plaintiffs presented evidence that Metal Teckniques sustained total losses of $383,344 on work for those companies, for which it incurred costs of $1,023,453 and billed only $640,109. Defendants have not shown that the fact that Metal Teckniques was not a profitable operation was due to any defect in the assets that it used, and plaintiffs should not be deprived of the right to recover a reasonable rental value for the use of those assets.

derive a benefit from use of the assets and that plaintiffs are not entitled to the reasonable rental value.

■■ Plaintiffs would ordinarily be entitled to recover the assets plus a reasonable rental value. In this case, the remaining assets, by order of a Washington court, were sold at auction and the proceeds placed in an account in Washington. Plaintiffs are entitled to recover that sum plus the reasonable rental value of the assets for 25 months. Because the trial court determined that plaintiffs were not entitled to rental value because Metal Teckniques made no profit, it did not reach the question of the amount of the reasonable rental value. Plaintiffs claim in their brief that their evidence indicated that a fair rental value is $3,831 to $5,000 per month. They do not cite to the record to support that claim. On remand, if the present record suffices, the trial court should determine and award plaintiffs the reasonable rental value with interest, as well as the proceeds of all of the assets sold at auction. Otherwise, a new trial must be had only to determine the reasonable rental value.

■ Plaintiffs, in their third assignment, contend that the trial court erred in granting the individual defendants summary judgment on T. Prentice's shareholder's derivative suit on the ground that T. Prentice had no standing to maintain the suit. The order granting rescission to Metal Teckniques, which we affirm, deprived T. Prentice of his 1,250 shares in the corporation. Although there are no statutory rules in Oregon governing standing in derivative litigation, we hold that general principles of standing require that, in order to bring a derivative suit, a shareholder must own stock at the time of the alleged wrong and retain ownership for the duration of the litigation. Derivative suits are brought on behalf of the corporation. A person must continue to be a shareholder throughout the litigation to have an incentive to prosecute an action fully and fairly. *Lewis v. Chiles,* 719 F2d 1044, 1047 (9th Cir 1983).

■■ The parties chose to bifurcate this suit for trial and tried the counterclaim for rescission before reaching T. Prentice's shareholder derivative claims and the counterclaims for securities law violations and fraud. As we discuss *infra,* if defendants prevail on their counterclaim alleging plaintiffs' violation of the Oregon Securities Law, they must tender their

shares to T. Prentice in order to recover the consideration paid for them. ORS 59.115(2). If that occurs, T. Prentice will reacquire stock in the. corporation in the course of this litigation. Accordingly, a decision as to T. Prentice's standing to maintain the shareholder's derivative suit should not be made until his status as shareholder of Metal Teckniques is finally resolved in the context of this litigation and, therefore, must await resolution of the securities law violation counterclaim which we remand for further proceedings, as discussed *infra.* The trial court's decision as to T. Prentice's standing was premature, and we reverse the summary judgment against him.

In their fourth and fifth assignments, plaintiffs contend that the court erred in granting the individual defendants summary judgment on their counterclaims for violation of the Oregon Securities Law and common law fraud arising from their purchase of stock in Metal Teckniques. In their counterclaims, defendants alleged that plaintiffs and M. Prentice misrepresented the operating profits of Metal Tech by use of Exhibit 1 in connection with the incorporation of Metal Teckniques and to induce defendants' purchase of stock in Metal Teckniques. In other words, the individual defendants claim that the same misrepresentations involved in the sale of Metal Tech's assets also were made in connection with the sale of Metal Teckniques' stock. In their answer, plaintiffs and M. Prentice denied those allegations, except that they admitted that defendants purchased stock in Metal Teckniques for $75,000.

In order to hold a person liable for violation of the Oregon Securities Law, one must prove that that person offered or sold a security in Oregon

"* * * by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading * * *." ORS 59.115(1)(b).

If a seller is held liable under this section,

"* * * every partner, officer, or director of such seller, * * * and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and, in the exercise of

reasonable care, could not have known, of the existence of the facts on which the liability is based. * * *" ORS 59.115(3).

After tender of the security, a successful plaintiff may recover the consideration paid, plus interest. ORS 59.115(2)(a).

The individual defendants' counterclaim alleges that the misrepresentations were made "in connection with * * * and for the purpose of inducing the incorporation of Metal Teckniques and the purchase of shares in Metal Teckniques by the defendants." The counterclaim does not allege that plaintiffs and M. Prentice offered or sold the stock to defendants. To support their motion, defendants incorporated the record of the first trial on Metal Teckniques' counterclaim for rescission. The record does not establish that there is no genuine issue of material fact as to (1) whether plaintiffs offered or sold Metal Teckniques stock or (2) whether the misrepresentations induced the purchase of the stock.

As to the first issue, defendants sought to hold T. Prentice and Metal Tech liable for selling securities by means of material misrepresentations. T. Prentice may be liable for his own acts under ORS 59.115(1). He may also be liable as an officer and director of Metal Tech under ORS 59.115(3), if defendants establish that Metal Tech offered or sold stock in Metal Teckniques. The record before the trial court on defendants' motion for summary judgment does not establish that there is no genuine issue of material fact whether T. Prentice or Metal Tech offered or sold stock in Metal Teckniques. There is evidence that suggests that defendants sold Metal Teckniques stock themselves.[3] T. Prentice received his shares

---

[3] T. Prentice and Ford initially discussed the sale of Metal Tech stock to defendants. The potential investors decided against this proposal, because they did not want to acquire any liabilities of Metal Tech. The idea of forming a new corporation to acquire the assets of Metal Tech, and in which the individual defendants would invest, appears to have originated with these defendants. The articles of incorporation, filed March 21, 1979, named as directors Edward Prentice, who is not a party to this action, T. Prentice and Don Warren, one of defendants. The minutes of the organizational meeting, held March 22, 1979, "noted that seven persons subscribed for common stock," and elected as officers: T. Prentice, president, Edward Prentice, vice-president, and Don Warren, secretary-treasurer. Shares of stock in Metal Teckniques were issued on April 14, 1979, to all seven shareholders, including T. Prentice and the six individual defendants. The first annual shareholders' meeting was held on the same date, and it elected a five-person board of directors, consisting of T. Prentice, three of the individual defendants - D. R. Itschner, Edward Christiansen and Don Warren - and Ken Graves, who is not a party to this suit. The first meeting of the board of directors was held on the same date, after the shareholders' meeting. The

as partial consideration for the sale of Metal Tech's assets. Defendant Ford testified regarding T. Prentice's becoming a shareholder of Metal Teckniques:

> "Q. Did Mr. Prentice eventually become a stockholder in your corporation?
>
> "A. Yes.
>
> "Q. What were the circumstances of his becoming a stockholder?
>
> "A. We agreed that he could become a stockholder in the corporation at the time we were discussing his contribution to the corporation; that that being again the high percentage of the business he was going to bring, the fact he was going to do the training and make the transition on the affair. And I agreed with it because it seemed only fair since he was making that type of contribution he should be a stockholder in the organization.
>
> "And on that basis, we presented — I presented the situation to the other investors, the fact that Tom would be a stockholder in the organization and the reason he'd be a stockholder in the organization. He could see a chance to make a profit for both the sales and the fabrication."

Defendants did not establish beyond dispute that plaintiffs offered or sold a security.

 T. Prentice could also be personally liable to defendants as an officer or director of Metal Teckniques if that corporation was the seller. "Sale" is defined in ORS 59.015(11)(a) as follows:

> " 'Sale' or 'sell' includes every disposition or attempt to dispose of, contract to sell, attempt or offer to sell, exchange of, option for the sale of, solicitation of an offer to purchase, or subscription for, a security or an interest in a security for a consideration, directly or by an agent, circular, letter, advertisement or otherwise, regardless of whether or not any person so acting has power to pass title to or control the disposition of the security or acts as a finder. Any security given or delivered with, or as a bonus on account of, a purchase of securities or any other thing shall constitute a part of the subject of such

board elected Christiansen as its chairman and Warren as its secretary. The board also nominated and approved as officers: T. Prentice, president, Ken Graves, vice-president and general manager, Edward Prentice, vice-president for manufacturing; and Don Warren, secretary-treasurer.

purchase and shall have been offered and sold for a consideration. A gift of assessable stock by or for any issuer or promoter shall constitute a sale. The offer, sale, transfer or issue for a consideration of any right, privilege, option or warrant which gives the holder or another person a present or future right to subscribe for or purchase another security of the same or another issuer shall be an offer of such other security."

As we read ORS 59.115(3), officers and directors of a seller may be held liable only if the corporation as seller is first found liable under ORS 59.115(1), because ORS 59.115(3) makes officers and directors of a seller "also liable jointly and severally with and to the same extent as the seller * * *." T. Prentice was an officer and director of Metal Teckniques at the time when Metal Teckniques issued its shares to defendants. As the issuer, Metal Teckniques should be considered to have sold its shares. T. Prentice could be liable under ORS 59.115(3) as an officer and director of Metal Teckniques, provided that Metal Teckniques' liability as a seller under ORS 59.115(1) is established. However, defendants did not assert any claims for securities fraud against Metal Teckniques, and T. Prentice's liability as officer and director of Metal Teckniques is not before us.

■ There also remains a genuine issue of fact as to whether T. Prentice's misrepresentations induced defendants' purchase of shares in Metal Teckniques as well as Metal Teckniques' purchase of Metal Tech's assets. Although the first trial, on Metal Teckniques' counterclaim, concerned only the sale of assets, testimony at that trial *may* be read to support a claim that plaintiffs' misrepresentations also induced defendants' purchase of shares in Metal Teckniques; however, that was not the issue being tried in the rescission case, and the testimony is susceptible to other interpretations. For this reason, there is also a genuine issue of fact as to whether plaintiffs' misrepresentation induced defendants' purchase of the stock. Because there remain genuine issues of fact, the trial court erred in granting defendants' motion for summary judgment as to plaintiffs' liability under the Oregon Securities Law.

■ The analysis is different regarding defendants' counterclaim for common law fraud in the sale of the stock. The nine essential elements of fraud are:

"(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976).

Summary judgment is only appropriate if there is no genuine issue of material fact as to each of those elements. We hold that the court improperly granted defendants summary judgment on this counterclaim, on which it awarded $15,000 in punitive damages.

■■ Plaintiffs contend that T. Prentice gave Exhibit 1 to defendant Ford for his use only and did not intend that the information contained therein be communicated to the other defendants. Ford made a typed version of Exhibit 1 that contained some other calculations and that was distributed to the other defendants. T. Prentice testified that Ford "had agreed not to make any copies [of Exhibit 1], that this was privy between the two of us." Ford denies that he made any such agreement. In order for defendants other than Ford to recover for the alleged misrepresentations, they must show that T. Prentice made the representations to Ford with the intention that they should be communicated to and acted on by them. *Menefee v. Blitz,* 181 Or 100, 125, 179 P2d 550 (1947); *see also Rickli v. Autzen,* 270 Or 1, 4, 526 P2d 547 (1974). Because of the conflicting evidence on this issue, there remains a genuine issue of material fact at least with regard to plaintiffs' liability to defendants other than Ford.

■■ The ninth element of a cause of action for fraud is the claimant's injury. The measure of damages here is the difference between the amount paid for the stock and its value at the time of purchase. It is a claimant's burden to establish that the stock was worth less than the sum he paid for it. *Menefee v. Blitz, supra,* 181 Or at 133-34. Defendants presented no evidence to the effect that the stock was worth less than the amount they paid. The articles of incorporation authorized 10,000 shares of common stock with a par value of $10 per share. The seven shareholders each purchased 1,250 shares at par. At the time when the shares were issued, April 14, 1979, the corporation already had acquired assets with a

value of $172,976.44.[4] Considering only those assets, it appears that each authorized share had a book value of $17.30 and each issued share, $19.77.

 Defendants argue that their damages were incurred when the stock became worthless in 1981. That is not the correct time at which to evaluate the stock in order to determine if an injury was shown to support liability for fraud; this point is made clear when one considers that it may have been the acts of defendants themselves which caused the corporation to lose money. *See* n 2, *supra.* Because there remains a genuine issue as to whether defendants sustained damages sufficient to support an action for common law fraud, the trial court erred in granting summary judgment.

Defendants cross-appeal, assigning two errors to the proceedings below. First, the individual defendants claim that the court erred in entering judgment in favor of M. Prentice on their counterclaim for violation of the Oregon Securities Law. The court found that she "participated in drafting" Exhibit 1 and that she did not present any evidence that she did not know or, in the exercise of reasonable care, could not have known of the misrepresentations contained therein. The court ruled that she was "merely the pawn" of T. Prentice in making the misrepresentations and therefore was not liable under the Oregon Securities Law.

M. Prentice's liability under ORS 59.115(3) is dependent on T. Prentice's or Metal Tech's liability under ORS 59.115(1) as "sellers." Defendants argue that she is liable either as an officer of Metal Tech, if Metal Tech sold the securities, or as a "person who participates or materially aids in the sale." There is no evidence that Metal Tech sold stock in Metal Teckniques. Her liability, if any, must be as a participant with or a material aid to T. Prentice in the sale.

 On her motion for summary judgment, M. Prentice had the burden to prove, as a matter of law, that she did not materially aid T. Prentice. She and T. Prentice deny that she participated in the sale in any way but claim that, if she did, she acted only as a scrivener in copying figures given to her by

---

[4] This is the amount of consideration which Metal Teckniques agreed to pay for Metal Tech's assets. There was no evidence that the assets were worth less than this amount.

him. If that were the only evidence, she would not have materially aided under the holding of *Fakhrdai v. Mason,* 72 Or App 681, 696 P2d 1164 (1985), where we said:

"The cases in Oregon interpreting ORS 59.115(3) have consistently held that something more than the mere preparation and execution of documents is required to find liability for 'participating' or 'materially aiding' under the statute. *See Adams v. American Western Securities, Inc.,* 265 Or 514, 528, 510 P2d 838 (1973); *Gonia v. Estep,* 251 Or 431, 446 P2d 114 (1968). * * *" 72 Or App at 684.

*See also Black & Company v. Nova-Tech, Inc.,* 333 F Supp 468, 472 (D Or 1971).

In response to M. Prentice's evidence, defendants presented testimony by a handwriting expert that Exhibit 1 was in her handwriting. There was thus a question of fact as to whether she participated in the sale at all.

We have said that the evidence supports the contention that Exhibit 1 was material to the sale of the assets and that the same evidence may arguably be read to say that it also induced the sale of the stock. Given her controverted denial that she participated at all, a factfinder could conclude that she did participate in the preparation of a document "without which the 'sale would and could not have been completed or consummated' * * *." *Fakhrdai v. Mason, supra,* 72 Or App at 686. The factfinder would not be required to believe her testimony or that of T. Prentice, both interested parties, that her role in the preparation of Exhibit 1 was as limited as they claimed. Summary judgment for M. Prentice was improperly granted.

Defendants assign as a second error the trial court's failure to award them the full $75,000 consideration which they paid for Metal Teckniques stock under ORS 59.115(2). The trial court found that these defendants paid $14,826.54 of this amount directly to Metal Tech, on Metal Teckniques' behalf, and the balance of $60,173.46 to Metal Teckniques and awarded defendants only $14,826.54, without requiring them to tender the stock to plaintiffs. This assignment is made moot by our reversing the summary judgment which held T. Prentice liable for violation of the Oregon Securities Law. We note that the statute clearly provides for a successful plaintiff's recovery of the full consideration paid for the security,

plus interest, on his tender of the security, without regard to whom the consideration was paid.

On appeal, the judgment is affirmed insofar as it granted Metal Teckniques rescission and denied plaintiffs' motion to dismiss Metal Teckniques' counterclaim. The denial to plaintiffs of reasonable rental value for the assets which were subject to the rescinded sale contract and the granting to defendants of summary judgment on T. Prentice's shareholder derivative claims and on defendants' counterclaims for fraud in the sale of securities are reversed and remanded. On cross-appeal, the judgment is reversed as to the trial court's granting summary judgment to M. Prentice and is otherwise affirmed.